# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOSEPH ENNEKING,<br>on behalf of himself and all others<br>similarly situated,<br><br>        **Plaintiffs,**<br><br>v.<br><br>SCHMIDT BUILDERS SUPPLY INC.,<br>MARY S. DUNCAN,<br>JOHN W. DUNCAN,<br>TIMOTHY SCHMIDT, and<br>SS&C SOLUTIONS INC. f/k/a<br>SS&C Business & Tax Services, Inc.<br><br>        **Defendants.** | **Case No. 11-cv-4111-JAR-KGG** |

## MEMORANDUM AND ORDER

Plaintiffs filed suit against defendants under the Employee Retirement Income Security Act of 1974 ("ERISA") for breaches of fiduciary duties (including failure to disclose, concealment, failure to conduct prudent and independent investigation to determine the fair market value of stock, failure to act for exclusive benefit, and prudence), federal common law ERISA fraud, nonfiduciary party in interest, and to recover damages for negligent valuation of company stock under Kansas state law.  This case comes before the Court on Defendants Mary Duncan, John Duncan, and Schmidt Builders Supply's Motion to Dismiss Plaintiff's Claims (Doc. 19), Defendant Timothy Schmidt's Motion to Dismiss Plaintiff's Claims (Doc. 21), and Defendant SS&C Solutions Inc.'s Motion to Dismiss for Failure to State a Claim (Doc. 23).  The motions are fully briefed, and the Court is prepared to rule.  As explained more fully below, the Court grants dismissal of Counts I, II, III, IV, VI and VII, but denies dismissal of Count VIII.

I.      **Motion to Dismiss - Rule 12(b)(6) Standard**

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[1]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[3] but requires more than "a sheer possibility."[4]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[5] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[6]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

---

[1]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[3]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4]*Id.*

[5]*Twombly*, 550 U.S. 544 (2007).

[6]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[7]*Id.* (citing *Twombly*, 550 U.S. at 556).

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

## II.      Summary of Complaint

The following allegations are taken from Plaintiffs' Complaint.  As noted above, well-pleaded factual allegations in the complaint are assumed to be true for purposes of determining whether the complaint states a claim for relief.

### A.      Parties

Plaintiff Joseph Enneking ("Enneking") was a participant in the Schmidt Builders Supply Inc. ("Schmidt Builders") 401(k) Profit Sharing Plan and Employee Stock Ownership Plan ("ESOP"), both employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3).  Enneking is a co-trustee of the ESOP.  Enneking did not assist with the creation of the ESOP or participate in the ongoing maintenance of the ESOP.  Enneking brings this action on his own behalf and as a class representative on behalf of the class of all persons who were

---

[8]*Iqbal*, 556 U.S. 662, 678.

[9]*Id.* at 679.

[10]*Id.*

[11]*Id.* at 678.

3

participants in the ESOP or beneficiaries of such participants who suffered as a result of the 2003 transfer from the 401(k) Plan to the ESOP or suffered harm as a result of the July 2011 collapse of Schmidt Builders.

Defendant Schmidt Builders ("Schmidt Builders") is a Kansas corporation. Schmidt Builders was the Administrator of the 401(k) Plan and the ESOP. Schmidt Builders is the "employer" who employed eligible employees under the 401(k) Plan and the ESOP. Schmidt Builders is a fiduciary of the Plan and a "party in interest."

Defendant Timothy Schmidt ("Schmidt") was the sole owner of Schmidt Builders from 1997 until its sale in 2003. He was the Administrator, a fiduciary of the 401(k) Plan, and a "party in interest."

Defendant Mary Duncan was 60% owner, President, and Chairman of the Board after the 2003 sale of Schmidt Builders. She is Timothy Schmidt's sister. She was the Administrator, is a fiduciary of the ESOP, and a "party in interest."

Defendant John Duncan is Mary Duncan's husband and the Chief Financial Officer of Schmidt Builders. He is also the Secretary and Treasurer of Schmidt Builders from 1996 to present. He was the Administrator of the 401(k) Plan and ESOP, is trustee of the ESOP, and a "party in interest." Upon information and belief, John Duncan is a convicted felon, convicted of five counts of Kansas securities fraud and five counts of theft of $150 or more, for offenses occurring on or about July 20, 1987.

SS&C Solutions Inc., f/k/a Business and Tax Services, Inc. ("SS&C") is a Kansas corporation and a CPA firm that conducted a valuation analysis of Schmidt Builders stock in conjunction with the 2003 ESOP formation, conducted ongoing annual ESOP valuations up to

and including the 2009 ESOP valuation, provided material assistance and advice to Schmidt

Builders, the Duncans, and Timothy Schmidt regarding formation and tax qualification approval

of the ESOP by the Internal Revenue Service, and conducted other financial services for Schmidt

Builders.  SS&C is a "party in interest."

  **B.**  **Factual Allegations**

  Plaintiffs were employed as full-time employees by Schmidt Builders and ESOP

Participants sometime during the period of January 1, 2002 and July 31, 2011.  Until December

31, 2002, eligible Schmidt Builders employees participated in Schmidt Builders' 401(k) Plan.

  Defendant Timothy Schmidt had taken control of Schmidt Builders in January 1997 by

Schmidt Builders redeeming the co-owner's stock for book value of approximately $2,000,000,

leaving Timothy Schmidt as the sole shareholder.  On November 26, 2002, Defendants Timothy

Schmidt, John Duncan, and Mary Duncan entered into a stock purchase agreement

("Agreement") to sell all of Schmidt Builders' stock to Mary Duncan and the newly created

ESOP.  The Agreement closed on June 6, 2003.

  Pursuant to the terms of the Agreement, the ESOP would purchase 40% of Schmidt

Builders for $1,455,000 and Mary Duncan would purchase the remaining 60% for $3,395,000.

Timothy Schmidt received three bonus payments in 2002-2003 totaling $314,385.71 and

additionally received $400,000 for a non-competition agreement—making the total paid for his

100% ownership interest in Schmidt Builders $5,564,385.71.

  For the ESOP to raise its share of the purchase price, at least $1,100,000 was required to

be transferred from the existing 401(k) Plan to the ESOP.  The transfer required employees to

affirmatively elect such a transfer from their 401(k) Plan accounts.  The employees were told

that if enough assets were not transferred from the 401(k) Plan to the ESOP, the sale of Schmidt

Builders would not close.  Regardless of the employees' decisions, the 401(k) Plan would be

discontinued December 31, 2002.  The difference between the 401(k) Plan rollover amount and

the ESOP purchase price would be funded with a loan from Schmidt Builders to the ESOP.  The

401(k) Plan was not encumbered by any debts.

Plaintiffs were told that a valuation expert, SS&C, was hired solely to represent the

ESOP and ESOP trustee to ensure the price paid by the ESOP for Schmidt Builders' shares was

fair to the ESOP participants and beneficiaries.  SS&C was originally retained by Schmidt

Builders to establish the ESOP so that the sale of Schmidt Builders could be consummated.  This

circumstance placed SS&C in the conflicted position of promoting and implementing the ESOP

as well as providing an objective valuation of the ESOP.  Plaintiffs were not adequately

informed of SS&C's conflict of interest or the risks of moving their 401(k) Plan to the ESOP.

SS&C's valuation failed to provide Plaintiffs with an accurate valuation of Schmidt

Builders, including failing to account for the Schmidt Builders' increased debt obligations

following the close of the Agreement.  SS&C continued ESOP valuations up to and including the

2009 ESOP valuation for the benefit of the ESOP Trustee and the ESOP participants.

Plaintiffs believed Timothy Schmidt was not operating Schmidt Builders in a financially

sound manner and believed that they had no other viable choice but to roll their 401(k) Plan

account to the ESOP to keep Schmidt Builders in business and keep their jobs.

Mary Duncan raised her share of the purchase price by issuing a promissory note to

Schmidt Builders in exchange for the funds.  Schmidt Builders did not take a security interest in

any of her assets or require a personal guaranty to secure her obligation.

6

Mary Duncan's stock was pledged to the bank as collateral for the bank's loan to Schmidt Builders.  Schmidt Builders took on significant debt as part of the Agreement to fund Mary Duncan's and the ESOP's loan proceeds to pay Timothy Schmidt, specifically a $1,400,000 term loan and $6,000,000 line of credit as of the June 6, 2003 closing date—encumbering virtually all of its assets.

In its 2003 valuation of Schmidt Builders, SS&C classified Mary Duncan's note as an asset of Schmidt Builders; however, SS&C reclassified the note as a dividend to Mary Duncan in the adjusted balance sheet.  The reclassification caused Schmidt Builders to reflect a negative net worth.

Plaintiffs were not told about the rollover until a May 2003 meeting.  Plaintiffs were required to make a decision whether to elect to transfer their 401(k) Plan account to the ESOP at that meeting.  Plaintiffs were provided with a lengthy and complicated Information Statement. The Information Statement noted the "special election opportunity being offered" to invest in Schmidt Builders and that the proposed sale to the ESOP "will help preserve the value in this Company built over the years."  The Information Statement also stated that the ESOP trustee, John Duncan, would act in the best interest and for the exclusive benefit of participants, that the ESOP would only purchase Schmidt Builders' stock if the purchase price was not in excess of its fair market value and the purchase was prudent, that an independent valuation expert (SS&C) was retained solely for the benefit of ESOP participants, and that the 401(k) Plan Administrator (Timothy Schmidt) was also the sole seller and would determine prior to the Agreement closing that carrying out the transfer elections were solely in the interest of and for the exclusive benefit of the 401(k) participants.

The Information Statement did not include any future projections of Schmidt Builders continuing as a going concern with increased debt, and failed to acknowledge that the debt incurred by Schmidt Builders for Mary Duncan's purchase was a "Risk Factor," that Mary Duncan was not incurring any real financial risk to purchase Schmidt Builders, that the independent valuation expert, SS&C, was also retained to orchestrate the creation of the ESOP and related transaction, that the ESOP trustee was a convicted felon, or that the fiduciaries who were selected had a vested and financial interest in closing the Agreement.

Plaintiffs were never told that a collapse of Schmidt Builders would wipe out their 401(k) assets transferred to the ESOP.  Timothy Schmidt and Mary Duncan knew of John Duncan's criminal background, and yet he served as a fiduciary for the 401(k) Plan and the ESOP. Plaintiffs were not told about the nature of the transaction, John Duncan's criminal background, Timothy Schmidt's recent purchase of Schmidt Builders for far less than the 2003 purchase price, and other information that would allow them to make an informed decision prior to transferring their 401(k) Plan account balance.

Plaintiffs received no benefit from transferring their 401(k) balances to the ESOP. Plaintiffs were induced to transfer their 401(k)s based on statements made or omissions by Defendants.  Plaintiffs relied on Defendants to adequately protect their interests in the 401(k) Plan and ESOP.  Defendants knew or should have known that the future value of Schmidt Builders and its ability to continue as a successful enterprise would suffer due to the debt obtained to close the Agreement.

SS&C's valuation of Schmidt Builders was flawed because of its failure to properly characterize the promissory note from Mary Duncan in its narrative section at the beginning of

the valuation booklet, failure to account for the 1997 redemption of stock by Schmidt Builders of approximately $2,000,000, failure to properly account for the risk created by the additional debt taken on by Schmidt Builders, and failure to perform a basic reasonableness test.  Based on their knowledge of Schmidt Builders' finances, Timothy Schmidt, John Duncan, and Mary Duncan knew or should have known SS&C's valuation was flawed.  Due to Defendants' actions, Plaintiffs voluntarily transferred their 401(k) Plan account balance to the ESOP.

Defendants intentionally failed to disclose and concealed the true nature of the underlying transaction, the fiduciary Defendants' inherent conflicts of interest, SS&C's conflict of interest, John Duncan's criminal background, Timothy Schmidt's recent purchase of Schmidt Builders for far less than the 2003 purchase price, and the extraordinary bonus payments paid to Timothy Schmidt, which were not a part of the Agreement.

As part of the Agreement closing, Mary and John Duncan executed an agreement that John Duncan would remain in his position as Chief Financial Officer and continue to be elected Secretary and Treasurer upon closing.  Following the closing, John and Mary Duncan were the only directors of Schmidt Builders and as sole shareholders and sole directors they would determine whether to collect the debt owed by Mary Duncan.  John and Mary Duncan knew or should have known the Schmidt Builders' value was dropping regardless of the annual valuations.  With this knowledge, the fiduciaries took no action to divest the ESOP of Schmidt Builders stock, ultimately causing all the ESOP participants to lose their investments.

The concealment of the significant and material information associated with the creation of the ESOP, rollover of the 401(k) Plan accounts, and true nature of the Agreement was not discovered by Plaintiffs until the collapse of Schmidt Builders in July 2011.

9

## III.      Discussion

Schmidt Builders, Mary Duncan and John Duncan move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims for breach of fiduciary duty and common law ERISA fraud arising out of Plaintiffs' decision to invest in Schmidt Builders' ESOP (Counts I, II, III, IV, and VI).  Defendant Schmidt separately moves to dismiss on the same grounds.  These Defendants argue that Plaintiffs' claims are subject to dismissal because (1) the ERISA claims are time barred; (2) Plaintiffs failed to plead allegations of fraud and concealment with sufficient particularity; (3) Plaintiffs have not shown that they relied on any statement or omission by Defendants in deciding to invest in the ESOP; and (4) there is no recognized action for federal common law ERISA fraud.

Defendant SS&C separately moves to dismiss under Rule 12(b)(6).  Like the other Defendants, SS&C argues that all of Plaintiffs' claims against it are barred by the statute of limitations and that no cause of action for federal common law ERISA fraud exists.  SS&C further argues that Plaintiffs' nonfiduciary party in interest claim fails to state a claim, and that Plaintiffs' negligence claim is preempted by ERISA and fails to allege sufficient facts to establish reliance because Plaintiffs made their election to transfer funds before the valuation letter was issued.

### A.      Breach of Fiduciary Duties (Counts I, II, III, IV)

Plaintiffs' ERISA claims for breach of fiduciary duty[12] are governed by 29 U.S.C. § 1113:

---

[12]Counts I and II do not specify whether they are brought under ERISA or under Kansas common law.  To the extent Plaintiffs assert claims under Kansas common law, they are clearly preempted.  *See Cannon v. Grp. Health Serv. of Okla., Inc.*, 77 F.3d 1270, 1273–74 (10th Cir. 1996).

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.[13]

Plaintiffs maintain that the statute of limitations for their breach of fiduciary duty claims accrued when they discovered the breach in July 2011 because the claims involve "fraud or concealment."  Defendants argue that Plaintiffs' fraud or concealment allegations are insufficiently pled, so the claims accrued in 2003 and are thus time-barred.

There is a split of authority as to whether the "fraud or concealment" provision in 29 U.S.C. § 1113 refers to the nature of the claim for breach of fiduciary duty, or to the steps taken by the fiduciary to conceal their acts.  The Tenth Circuit has not ruled on this issue.  The majority of circuits have held that the "fraud or concealment" provision in 29 U.S.C. § 1113 incorporates the federal concealment rule.[14]  The concealment rule established by the Supreme Court[15] is derived from the principle of equitable estoppel and provides that when a defendant's wrongdoing "has been concealed, or is of such character as to conceal itself, the statute [of

---

[13]29 U.S.C. § 1113.

[14]*Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1552 (3d Cir. 1996); *J. Geils Band Employee Benefit Plan v. Smith Barney*, 76 F.3d 1245, 1252 (1st Cir. 1996); *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1401-02 (9th Cir. 1995); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172-73 (D.C. Cir. 1994); *Radiology Ctr. v. Stifel Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990); *Schaefer v. Ark. Med. Soc'y*, 853 F.2d 1487, 1491-92 (8th Cir. 1988).

[15]*Bailey v. Glover*, 88 U.S. (21 Wall.) 342 (1874).

11

limitations] does not begin to run until the [wrongdoing] is discovered" by the plaintiff.[16] "The relevant question is therefore not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty."[17] "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. "[18] "[F]raud claims do not receive the benefit of ERISA's six-year statute of limitations simply because they are fraud claims. There must be actual concealment—i.e., some trick or contrivance intended to exclude suspicion and prevent inquiry."[19]

The Second Circuit follows a different approach, holding that the six-year statute of limitations applies if the alleged breach of fiduciary duty involves fraud or fraudulent concealment.[20] Under the Second Circuit's approach, the six-year statute of limitations applies when a fiduciary either "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; *or* (2) engaged in acts to hinder the discovery of a breach of fiduciary duty."[21] Thus, to survive a motion to dismiss and take advantage of ERISA's six-year statute of limitations for fraud or concealment after the date of discovery, a plaintiff must plead fraud with particularity. Under

---

[16]*Id.* at 349-50; *see also* Black's Law Dictionary 282 (7th ed.1999).

[17]*Kurz*, 96 F.3d at 1552.

[18]*Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 143 (1879).

[19]*Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1094 (7th Cir. 1992) (internal quotations omitted) (citing *Wood*, 101 U.S. (11 Otto) at 143).

[20]*Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 919–20 (2d Cir. 1989).

[21]*Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir. 2001).

Fed. R. Civ. P. 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[22]  The rule's purpose is to provide the defendant fair and adequate notice of the claim and to allow the defendant to respond on an informed basis.[23]  A fraud claim requires "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[24]

> It is true that Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.' But 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. . . .  And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss.[25]

The Court need not predict which approach the Tenth Circuit would take because Plaintiffs fail to allege sufficient facts under either approach to avail themselves of the six-year limitations period accruing from the time of discovery.  Plaintiffs allege that the following facts were not disclosed or were intentionally concealed, causing them to elect to roll their 401(k) accounts into the ESOP in the late spring of 2003: (1) John Duncan, the ESOP and 401(k) fiduciary, was a felon convicted of financial crimes and dishonesty; (2) that it is a criminal act to place or permit John Duncan to serve as an ERISA fiduciary under 29 U.S.C. 1111; (3) the leveraged nature of the business following the sales transaction; (4) SS&C's conflict of interest created by promoting and designing the ESOP transaction for the benefit of Timothy Schmidt

---

[22]Fed. R. Civ. P. 9(b).

[23]*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

[24]*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citing *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

[25]*Ashcroft v. Iqbal,* 556 U.S. 662, 686-87 (2009).

while serving as an independent arbiter of fairness and fair market value; (5) concealment of SS&C's flawed valuation, including the reclassification of Mary Duncan's note; (6) Mary Duncan's lack of material risk following the purchase; (7) that a collapse of Schmidt Builders would wipe out the participants' retirement savings; (8) the transaction's overall structure; and (9) Defendants' knowledge that the value and ability of Schmidt Builders to continue would suffer immensely due to the debt burden incurred as part of the ESOP transaction.

But accepting all of these allegations as true does not establish that Defendants took any steps to actively conceal information from Plaintiffs or that they otherwise engaged in any trick or contrivance intended to exclude suspicion and prevent inquiry. Plaintiffs were provided with an Information Statement containing relevant information and disclosures.[26] The Information Statement informed eligible participants of the risks involved in choosing to transfer their 401(k) benefits to the ESOP,[27] the nature of the underlying transaction,[28] and the Trustee Defendants' purported "inherent conflicts of interest."[29] The risk of investing in the ESOP was disclosed in the Information Statement and included the fact that a "downturn in the market or the economy could hurt our business" and discussed the risks of holding one, non-publicly traded company.[30]

---

[26]Doc. 20, Ex. 1 at 5-8, 12-15. Plaintiffs allege the content of the Information Statement in the Complaint and have not questioned the authenticity of the document. As such, the Court may consider it in ruling. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (providing that documents whose contents are alleged in a complaint and whose authenticity no party questions may be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

[27]Doc. 20, Ex. 1 at 13.

[28]*Id.* at 14.

[29]*Id.* at 14-15.

[30]*See id.* at 7-10.

The fact that Plaintiffs may lack financial, accounting, or other similar training makes no difference. "[T]he exercise of reasonable diligence requires an investor"—even an "unsophisticated investor"—to be "reasonably cognizant of financial developments relating to [their] investment, and mandates that early steps be taken to appraise those facts which come to the investor's attention."[31]  And the Information Statement encouraged eligible participants to consult their "own competent legal counsel, accountant or business advisor" regarding whether to rollover their 401(k)s into the ESOP.[32]  The default was that the 401(k)s would *not* automatically roll into the ESOP without active election.

Actual knowledge does not require proof that the Plaintiffs actually read (let alone understood) the documents that disclose allegedly harmful investments.[33]  The factual allegations in the Complaint establish that Plaintiffs were given the Information Statement.  Regardless of whether Plaintiffs even read the document, the Court can reasonably infer actual knowledge

---

[31]*J. Geils Band Emp. Ben. Plan*, 76 F.3d 1245, 1259 (1st Cir. 1996) (concluding that the plaintiff's claims were time-barred because "even unsophisticated investors, such as Appellants here, should have sought to learn more about the nature and content of the Plan's management. . . .  Unsophisticated or not, plaintiffs cannot shroud themselves in ignorance or expect that their unsophistication will thoroughly excuse their lack of diligence or failure, here, to even inquire.").

[32]Doc. 20, Ex. 1 at 6.

[33]*See Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008) (holding that the plaintiffs had actual knowledge of an alleged failure to diversify plan investments when they were provided with plan documents that described the investments as undiversified, regardless of whether the plaintiffs "actually saw or read the documents"), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009); *see also Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) (stating that Congress did not intend "the actual knowledge requirement to excuse willful blindness by a plaintiff"); *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (holding that when a plan participant is given specific instructions on how to access plan documents, their failure to read the documents will not shield them from having "actual knowledge" of the documents' terms, for purposes of ERISA's statute of limitations for breach of fiduciary duty).

from these factual allegations.[34]  Under the concealment rule approach, Plaintiffs' Complaint fails to state a claim involving fraud or concealment sufficient to allow the six-year statute of limitations to begin to run from the time the injury was discovered.

Even if the Court followed the Second Circuit's application of the fraud or concealment exception in ERISA § 413, Plaintiffs' claims would still not survive.  One necessary element of a fraud claim is a false representation.[35]  Plaintiffs allege that the Information Statement fraudulently declared that the ESOP transfer would close only if the ESOP fiduciary concluded that the transfer was solely in the interest of and for the exclusive benefit of the participants and that the profit sharing fiduciary would determine that the ESOP transfer was solely in the interest of and for the exclusive benefit of the participants.  However, these allegations are not pleaded with the requisite particularity in Plaintiffs' Complaint.  Instead, Plaintiffs' allegations are generalized claims of fraud and concealment; such allegations do not meet the test of Rule 9(b).  Consequently, Plaintiffs' ERISA claims failed to properly plead fraud or fraudulent concealment with sufficient particularity to receive the benefit of the extended limitations period in ERISA § 413.  Because the ERISA causes of action accrued more than three years after Plaintiffs had actual knowledge of the breaches of fiduciary duty, their claims are time-barred.  Accordingly, Counts I, II, III, and IV are dismissed.

### B.    Federal Common Law ERISA Fraud (Count VI)

---

[34]*See, e.g.*, *Young*, 550 F. Supp. 2d at 419 n.3 (holding that the plaintiffs had actual knowledge of an alleged failure to diversify plan investments when they were provided with plan documents that described the investments as undiversified, regardless of whether the plaintiffs "actually saw or read the documents").

[35]*See Zell v. Commissioner*, 763 F.2d 1139, 1144 (10th Cir. 1985).

16

Defendants move for dismissal of Count VI, arguing that it does not state a claim upon which relief can be granted because courts have refused to create a federal common law ERISA fraud claim.  ERISA provides a comprehensive plan for civil enforcement of the rights and responsibilities under its statutory scheme.[36]  The Supreme Court has stated that the "six carefully integrated civil encodement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to expressly incorporate."[37]  While providing numerous remedies for violations, ERISA simply does not permit a claim for fraud as one of its enforcement mechanisms.[38]

While the Tenth Circuit has not directly addressed the availability of a common law fraud claim under ERISA, other circuit courts have found that ERISA does not allow the courts to invent such a claim.  In *Sanson v. General Motors Corp.*, the plaintiff argued that the court should create a federal common law fraud claim under ERISA.[39]  Based on the Supreme Court's language in *Pilot Life*, the Eleventh Circuit rejected this attempt to create a fraud remedy that is not within ERISA's statutory framework.  Similarly, the Ninth Circuit has rejected a request to create a federal common law fraud remedy under ERISA.[40]  Several district courts have relied on

---

[36]*Pilot Life Ins. Co. v. Dedaux,* 481 U.S. 41, 54 (1987).

[37]*Id.*. at 54 (citing *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146 (1987) (emphasis in original)).

[38]*See* 29 U.S.C. § 1132(a).

[39]*Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 621-22 (11th Cir. 1992).

[40] *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1423 (9th Cir. 1991) ("we agree with the district court that to devise a federal common law remedy for [the plaintiff's fraud] claim would defeat the scheme created by Congress in ERISA.").

these decisions in arriving at the same conclusion.[41]

While not addressing this specific issue, the Tenth Circuit has recognized that there is no remedy under ERISA for fraud or misrepresentation in inducing someone to join an employer-sponsored retirement plan.[42]  In *Uselton*, the plaintiffs, employees participating in an ESOP plan, claimed they were fraudulently induced to join the plan in violation of securities law and also asserted a fraud claim.  The Tenth Circuit held that ERISA did not provide sufficient protection to plan participants to displace application of federal securities law.[43]  In reaching that holding, the Court noted that: "Neither the parties nor our research has produced any authority indicating that ERISA provides such a remedy for misrepresentation or other fraudulent acts committed in connection with an individual's decision to join an ERISA-regulated plan."[44]

In Count VI, Plaintiffs claim they were fraudulently induced to invest in the ESOP.  A notable difference between the case at hand and *Uselton* is that at the time of election, Plaintiffs in this case were 401(k) participants.  Therefore, while Plaintiffs may have a right under ERISA to bring timely claims for breach of fiduciary duty, ERISA still does not permit a separate common law fraud claim.

The Court further notes that Plaintiffs failed to contest Defendants' position that common

---

[41]*See, e.g., Carpenter's Welfare Fund of Ill. v. Shadwick*, No. 93 C 3262, 1994 WL 86015, at *4 (N.D. Ill. Mar. 14, 1994) (following *Sanson* and *Olson* and refusing to create a federal common law fraud remedy under ERISA); *Adler v. Aztech Chas. P. Young Co.*, No. 91 Civ 5042, 1992 WL 309548, at *4 (S.D.N.Y. Oct. 15, 1992) (dismissing the plaintiff's federal common law fraud claim in an ERISA case).

[42]*Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564, 582 (10th Cir. 1991).

[43]*Id.*

[44]*Id.*

law fraud is not an available claim under ERISA.  Having failed to object to this portion of the Defendants' motion to dismiss, Plaintiffs are deemed to have abandoned this claim and acknowledged that it should be dismissed.[45]  Therefore, Count VI is dismissed.

### D.   Nonfiduciary Party in Interest Claim against SS&C (Count VII)

Count VII alleges that SS&C is a nonfiduciary party in interest and may be held liable for causing Plaintiffs to voluntarily transfer their 401(k) plan balance to the ESOP and for causing the ESOP to overpay for its interest in Schmidt Builders by overvaluing the business and its stock.  Under 29 U.S.C. § 1002 (14), "[t]he term 'party in interest' means, as to an employee benefit plan—(A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan; [or] (B) a person providing services to such plan; . . ."  Plaintiffs allege that SS&C was a party in interest hired solely to represent the ESOP and the ESOP trustee to ensure the price paid by the ESOP for Schmidt Builders' shares was fair to the ESOP participants and beneficiaries.[46]  Plaintiffs further allege that SS&C was originally retained to establish the ESOP so that the sale of Schmidt Builders could be consummated.[47]  And accepting Plaintiffs' factual allegations as true, SS&C was "providing services to the plan" through its valuations.  Therefore, the Complaint plausibly alleges that SS&C is a party in interest under ERISA.

---

[45]*Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1283 (D. Kan. 1997); D. Kan. R. 7.4 (providing that the Court will ordinarily grant an unopposed motion without further notice); *see also Turney v. DZ Bank AG Deutsche Zentral Genossenschaftsbank*, No. 09-2533-JWL, No. 2010 WL 3735757, at *6 (D. Kan. Sept. 20, 2010) (dismissing the plaintiff's claims after he failed to respond to the defendant's argument in his response to a motion to dismiss).

[46]Complaint ¶ 34.

[47]*Id.* ¶ 36.

SS&C argues, and Plaintiffs concede, that it may not be held liable under ERISA based solely on its status as a nonfiduciary party in interest.  SS&C complains that while ERISA imposes a duty on fiduciaries that cause a plan to engage in certain prohibited transactions between plans and parties in interest, it is not a fiduciary and that Plaintiffs fail to allege that SS&C engaged in any of the enumerated prohibited transactions.[48]  Plaintiffs respond that SS&C may be held liable under 29 U.S.C. § 502(a)(3) as a nonfiduciary party in interest.  To be sure, in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,[49] the Supreme Court decided that a plan participant, beneficiary, or fiduciary may bring suit against an "other person" who "knowing[ly] participat[es]" in a fiduciary's violation.[50]  However, the relief sought must be "appropriate equitable relief."[51]  And in making this determination, the Court is to consider the common law of trusts.[52]  In the restitution context, this means that "the transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust."[53]  In *Harris*, the plaintiffs claimed that the nonfiduciary party in interest caused the plan to engage in a prohibited transaction under § 1106(a) and sought recision of the transaction, restitution from the defendant, and disgorgement

---

[48]*See* 29 U.S.C. § 1106(a); *see also* § 1108 (listing exemptions).

[49]530 U.S. 238 (2000).

[50]*Id.* at 248–49 (construing 29 U.S.C. 1132(a)(3)).

[51]*Id.* at 250.

[52]*Id.*

[53]*Id.* at 251.

of profits made from the use of plan assets transferred to the defendant.[54]

In Plaintiffs' response, they argue that SS&C violated 29 U.S.C. § 1106(a)(1)(A) by improperly valuing Schmidt Builders, causing the ESOP, through its trustee to pay for Schmidt Builders stock, and placing Plaintiffs' 401(k) assets at risk.  While the Complaint generally alleges that SS&C failed to properly value Schmidt Builders and its stock, there are no allegations that SS&C participated in a prohibited transaction under § 1106.  The Court is only permitted to draw reasonable inferences from the language in the Complaint.  Here, Plaintiff merely asserts that it is a "party in interest," which is nothing more than a definition under ERISA.  Even drawing all reasonable inferences from Plaintiffs' factual allegations, the Complaint fails to place Defendant on notice of the claim as enunciated in Plaintiffs' response to the motion to dismiss.  It makes no allegation that the fiduciaries, much less the nonfiduciary party in interest, participated in a prohibited transaction.  There are likewise no allegations that SS&C knew or should have known that the fiduciaries participated in a prohibited transaction. The closest allegations in the Complaint are that Defendants "knew or should have known the future value of Schmidt Builders and its ability to continue as a successful enterprise would suffer immensely due to the debt obtained to close the Agreement," and that the Duncans knew the financial condition of Schmidt Builders was not strong after the Agreement closed; the "fiduciaries,"[55] armed with this knowledge, took no action to divest the ESOP of Schmidt

---

[54]*Id.* at 243.

[55]Despite Plaintiffs assertions in its response to the motion to dismiss, the Complaint contains no allegation that SS&C is a fiduciary under ERISA.  The Court need not resolve the issue of whether SS&C could qualify as a fiduciary under its alternative claims, however, because the breach of fiduciary duty claims are dismissed as time-barred.

Builders stock.  These allegations fall short of establishing that SS&C had actual or constructive

knowledge of a prohibited transaction.  Therefore, Count VII is dismissed for failure to state a

claim upon which relief may be granted.

### E.    Negligence Claim against SS&C (Count VIII)

SS&C argues that Plaintiffs' negligence claim in Count VIII should be dismissed because

it is time-barred, it is preempted by ERISA, and because it fails to allege sufficient facts to

establish reliance.

SS&C first asserts that the claim is based on alleged wrongdoing that occurred in 2003,

outside the two-year statute of limitations for negligence actions provided under K.S.A.

60-513(a).

> [T]he causes of action listed in subsection (a) shall not be deemed to have
> accrued until the act giving rise to the cause of action *first causes substantial
> injury*, or, if the fact of injury is not reasonably ascertainable until some time after
> the initial act, then the period of limitation shall not commence until *the fact of
> injury becomes reasonably ascertainable to the injured party*, but in no event
> shall an action be commenced more than 10 years beyond the time of the act
> giving rise to the cause of action.[56]

Plaintiffs allege that SS&C negligently breached its duty to provide an accurate valuation

of the company stock and as a proximate and direct result of this negligence, Plaintiffs were

damaged.  Plaintiffs allege that the "misstatement and concealment of the significant and

material information associated with the creation of the ESOP, rollover of 401(k) Plan accounts,

and true nature of the Agreement was not discovered by Enneking or the other members of the

---

[56]K.S.A. 60-513(b)  (emphasis added).

plaintiff class until the collapse of Schmidt Builders in July 2011."[57]

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[58]  Taking the allegations in the Complaint as true, Plaintiffs discovered the information alleged in the Complaint about the creation of the ESOP, rollover of the 402(k) plans, and "true nature" of the Agreement in July 2011.[59]  These allegations are sufficient to establish that the fact of injury did not become reasonably ascertainable to Plaintiffs until Schmidt Builders collapsed in July 2011 and the Complaint was filed in September 2011, well within the two-year limit.

As to SS&C's preemption claim, "courts routinely find that garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants, are not preempted."[60]  "[S]tate laws of negligence, indemnity, and fraud are laws of general application—not specifically targeting ERISA plans—that involve traditional areas of state regulation and do not affect 'relations among the principal ERISA entities.'"[61]  Therefore, the negligence claim in Count VIII against SS&C is not preempted.

---

[57]Complaint  ¶ 65.

[58]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[59]Unlike the ERISA claims, Plaintiff's negligence claim does not require allegations of deliberate concealment, nor does is it subject to the heightened pleading standard of Rule 9.

[60]*See, e.g.*, *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003) (citing *LeBlanc v. Cahill*, 153 F.3d 134, 138; *Ariz. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 717-18; *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1460 (4th Cir.1996); *Custer v. Sweeney*, 89 F.3d 1156, 1166-67 (4th Cir.1996); *Airparts Co. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1067 (10th Cir. 1994); *Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1152-53 (3d Cir.1989); *Harmon City, Inc. v. Nielsen & Senior*, 907 P.2d 1162, 1170 (Utah 1995).

[61]*Airparts Co.*, 28 F.3d at 1066 (quotations and citations omitted).

Finally, SS&C contends that Plaintiffs fail to state a claim for negligence because Plaintiffs could not have relied on SS&C's valuation letter when they made their election to roll over their 401(k) accounts to the ESOP since the valuation letter was not issued until June 3, 2003, after they made the decision to roll over the accounts.  SS&C attached the valuation letter, dated June 3, 2003, to its motion to dismiss.[62]  First, the Court declines to consider this exhibit. Unlike the Information Statement, the contents of the June 3, 2003 valuation letter are not explicitly referenced in the Complaint.[63]  Paragraph 38 of the Complaint, however, provides that "SS&C's valuation failed to adequately provide [Plaintiffs] an accurate valuation of Schmidt Builders."  The factual allegation does not specify the source of this valuation—Plaintiffs contend in the response that it is a reference to the Information Statement, which also included a valuation, not to the fairness opinion dated June 3, 2003.  The Information Statement represented that SS&C must have rendered an opinion that the purchase price was not in excess of fair market value and that the transaction was fair to the ESOP participants and beneficiaries.  Taking all reasonable inferences in favor of Plaintiffs, the Court agrees that the facts alleged are sufficient to establish that Plaintiffs relied on SS&C's valuation as set forth in the Information Statement in making their decision to roll over their accounts to the ESOP.

SS&C's Motion to Dismiss Count VIII is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Schmidt Builders, Mary Duncan, and John Duncan's Motion to Dismiss Counts I, II, III, IV, and VI (Doc. 19) is

---

[62]Doc. 24, Ex. 2.

[63]*See* Fed. R. Civ. P. 12(d); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

GRANTED.

**IT IS FURTHER ORDERED BY THE COURT** that Timothy Schmidt's Motion to

Dismiss Counts I, II, III, IV, and VI (Doc. 21) is GRANTED.

**IT IS FURTHER ORDERED BY THE COURT** that SS&C Solutions' Motion to

Dismiss Counts I, II, VI, VII, and VIII (Doc. 23) is GRANTED IN PART and DENIED IN

PART.  The motion is granted as to Counts I, II, VI, and VII.  The motion is denied as to Count

VIII.

**IT IS SO ORDERED**.

Dated: June 19, 2012

                          S/ Julie A. Robinson
                          JULIE A. ROBINSON
                          UNITED STATES DISTRICT JUDGE