IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH ENNEKING,                               )
on behalf of himself and all others            )
similarly situated,                            )
                                               )
                    Plaintiffs,                )
                                               )
v.                                             )
                                               )   Case No. 11-cv-4111-JAR-KGG
SCHMIDT BUILDERS SUPPLY INC.,                  )
MARY S. DUNCAN,                                )
JOHN W. DUNCAN,                                )
TIMOTHY SCHMIDT, and                           )
SS&C SOLUTIONS INC. f/k/a                      )
SS&C Business & Tax Services, Inc.             )
                                               )
                    Defendants.                )
_____)

## MEMORANDUM AND ORDER

This case comes before the Court on Plaintiffs' Motion for Reconsideration and, in the

Alternative, for Leave to File Amended Complaint (Doc. 44) and on a Motion to Intervene (Doc.

46), filed by former employees of Schmidt Builders Supply, Inc.  For the reasons explained in

detail below, both motions are granted in part and denied in part.  The Court grants leave to

amend as set forth in proposed Count I for breach of fiduciary duty except as to the prayer for

relief, Count II for Kansas Securities Fraud, Count V for breach of fiduciary duty under ERISA,

Count VI for negligence against SS&C and Count VII for fraud against SS&C.  The Court denies

leave to amend as set forth in proposed Count III for Kansas common law fraud, and Count IV

for relief associated with injury to the corporation, because these proposed amendments would

be futile.  The motion to intervene is granted to the extent the Intervenors assert claims that

survive the Court's June 19, 2012 Order on the motions to dismiss and the futility analysis set

forth in detail below.

I.      **Background**

Plaintiffs were employed as full-time employees by Schmidt Builders Supply, Inc. ("Schmidt Builders") and were Employee Stock Ownership Plan ("ESOP") Participants sometime during the period of January 1, 2002 and July 31, 2011.  Until December 31, 2002, eligible Schmidt Builders employees participated in Schmidt Builders' 401(k) Plan.  On November 26, 2002, Defendants Timothy Schmidt, John Duncan, and Mary Duncan entered into a stock purchase agreement ("Agreement") to sell all of Schmidt Builders' stock to Mary Duncan and a newly created ESOP.  The Agreement closed on June 6, 2003.  Pursuant to the terms of that Agreement, the ESOP would purchase 40% of Schmidt Builders for $1,455,000 and Mary Duncan would purchase the remaining 60% for $3,395,000.  In order for the ESOP to raise its share of the purchase price, at least $1,100,000 was required to be transferred from the existing 401(k) Plan to the ESOP.  The transfer required employees to affirmatively elect such a transfer from their 401(k) Plan accounts.  Regardless of the employees' decisions, the 401(k) Plan would be discontinued December 31, 2002.  The difference between the 401(k) Plan rollover amount and the ESOP purchase price would be funded with a loan from Schmidt Builders to the ESOP.

Plaintiffs were not told about the rollover until a May 2003 meeting.  Plaintiffs were required to make a decision whether to elect to transfer their 401(k) Plan account to the ESOP at that meeting.  Plaintiffs were told that a valuation expert, SS&C Solutions, Inc. ("SS&C"), was hired solely to represent the ESOP and ESOP trustee to ensure the price paid by the ESOP for Schmidt Builders' shares was fair to the ESOP participants and beneficiaries.  SS&C was

originally retained by Schmidt Builders to establish the ESOP so that the sale of Schmidt Builders could be consummated.

Plaintiffs contend that Defendants induced them into voluntarily transferring their 401(k) Plan account balance to the ESOP.  They contend that Defendants intentionally failed to disclose and concealed the true nature of the underlying transaction, the fiduciary Defendants' inherent conflicts of interest, SS&C's conflict of interest, John Duncan's criminal background, Schmidt's recent purchase of Schmidt Builders for far less than the 2003 purchase price, and the extraordinary bonus payments paid to Schmidt, which were not a part of the Agreement.

As part of the Agreement closing, Mary and John Duncan executed an agreement that John Duncan would remain in his position as Chief Financial Officer and continue to be elected Secretary and Treasurer upon closing.  The original Complaint alleges that John and Mary Duncan knew or should have known the Schmidt Builders' value was dropping regardless of the annual valuations.  With this knowledge, the fiduciaries took no action to divest the ESOP of Schmidt Builders stock, ultimately causing all the ESOP participants to lose their investments.

The concealment of the significant and material information associated with the creation of the ESOP, rollover of the 401(k) Plan accounts, and true nature of the Agreement was not discovered by Plaintiffs until the collapse of Schmidt Builders in July 2011, when the Duncans caused Schmidt Builders to enter into a Settlement Agreement with Kaw Valley Bank.  Schmidt Builders relinquished control of all assets, including the equity contributed by the ESOP from the employees' 401(k) accounts, to the lender, effectively eliminating all participants' retirement savings.

Plaintiffs filed suit against Defendants under the Employee Retirement Income Security

3

Act of 1974 ("ERISA") for breaches of fiduciary duties (including failure to disclose, concealment, failure to conduct prudent and independent investigation to determine the fair market value of stock, failure to act for exclusive benefit, and prudence), federal common law ERISA fraud, nonfiduciary party in interest, and to recover damages for negligent valuation of company stock under Kansas law.  On June 19, 2012, this Court granted Defendants' motions to dismiss Counts I, II, III, IV, VI, and VII.  The Court dismissed as time-barred Counts I–IV, the claims against all Defendants for breach of fiduciary duty under ERISA that arise out of Plaintiffs' decision to invest in Schmidt Builders' ESOP.  The Court granted the motion to dismiss Count VI because there is no cause of action for common law ERISA fraud.  The Court granted the motion to dismiss Count VII against SS&C because the Complaint failed to allege sufficient facts to support a claim against a non-fiduciary party in interest under ERISA.  The remaining claims in the original Complaint are Count V,[1] a breach of fiduciary duty claim under ERISA against Defendants Schmidt Builders and Mary and John Duncan for failure to manage the ESOP prudently; and Count VIII,[2] a negligence claim against SS&C.

## I.      Motion for Reconsideration

Plaintiffs move for reconsideration of the Court's June 19, 2012 Order under D. Kan. Rule 7.3.  Under that rule, a party must file the motion under either Fed. R. Civ. P. 59(e) or 60. A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or

---

[1]This claim is presented in proposed amended Count V.

[2]This claim is presented in proposed amended Count VI.

4

(3) the need to correct clear error or prevent manifest injustice.[3]  Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[4]  Plaintiffs make no attempt in their motion to meet the standard applicable to a motion for reconsideration.  They cite no change in the controlling law. Nor is the second ground for relief available—the Court evaluates factual allegations and not evidence in evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  And the purportedly new evidence referenced in the motion preceded the Court's ruling on the motion to dismiss and largely preceded the filing of the original Complaint.  Plaintiffs' motion is entirely based on their contention that the Proposed Amended Complaint suffices to cure the deficiencies identified by the Court in its June 19 Order.  Accordingly, relief under either Rule 59(e) or Rule 60 is denied and the Court proceeds to consider the motion to amend.

## II.    Motion for Leave to Amend

The crux of Plaintiffs' motion argues that the Court should allow leave to amend because they have learned new facts since the time of their original pleading that would change the outcome of the Court's decision; the motion also asserts new legal claims not asserted in the original Complaint.  Under Rule 15(a), leave to amend a complaint is freely given when justice so requires.[5]  A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive,

---

[3]*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

[4]*Servants*, 204 F.3d at 1012; *Brown v. Presb. Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997).

[5]Fed. R. Civ. P. 15(a)(2).

failure to cure deficiencies by amendment previously allowed, or futility of amendment."[6]  A

proposed amendment is futile if the amended complaint would be subject to dismissal.[7]

Defendants argue that leave to amend should be denied based on undue delay, and because the

proposed amendment is futile.

### A.    *Undue Delay*

Undue delay alone is sufficient to deny a motion to amend; there need not be a showing

of prejudice.[8]  In the Tenth Circuit, undue delay may be found "when the party filing the motion

has no adequate explanation for the delay."[9]  The Court may also deny leave to amend if the

moving party "knows or should have known of the facts upon which the proposed amendment is

based but fails to include them in the original complaint."[10]   Moreover, motions for leave to

amend are correctly denied

> when it appears that the plaintiff is using Rule 15 to make the
> complaint "a moving target" to "salvage a lost case by untimely
> suggestion of new theories of recovery," present "theories
> seriatim" in an effort to avoid dismissal, or to "knowingly delay[ ]
> raising [an] issue until the eve of trial."[11]

While liberality of amendment is important, it is equally important that "there must be an end

---

[6]*Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

[7]*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

[8]*See, e.g., Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1229–30 (D. Kan. 2002).

[9]*Minter v. Primer Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

[10]*Cuenca*, 205 F. Supp. 2d at 1230.

[11]*Minter*, 451 F.3d at 1206 (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001);  *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994); *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995)).

finally to a particular litigation."[12]

Here, the Court is troubled by Plaintiffs' delay in bringing this motion.  The original Complaint was filed on September 20, 2011.  The motions to dismiss were filed on November 23, 2011 and fully briefed on December 29, 2011.  Plaintiffs made no effort after the motions to dismiss were filed to amend the Complaint; those motions certainly placed Plaintiffs on notice of the deficiencies in the original pleading.  Instead, Plaintiffs waited to seek leave to amend until after the Court ruled on the motions to dismiss in a lengthy order that consumed a substantial amount of time and research.

Yet the cases that discuss the problem of "moving target" complaints largely deal with amendments after summary judgment, or amendments proposed much closer to trial.  While this case has certainly been delayed due to the length of time the motions to dismiss and instant motions have been pending, the parties' original discovery deadlines have been stayed and they are set for a scheduling conference on January 10.  The Court believes this is a case where Plaintiffs obviously thought their original allegations were sufficient to withstand the statute of limitations defense and therefore failed to seek leave to amend prior to a ruling on the motions to dismiss.  As explained in the Court's June 19 Order, the Tenth Circuit has not yet ruled  on the proper test for accrual of the statute of limitations under 29 U.S.C. § 1113.  Under the circumstances, the Court finds that the reasons for delay are excusable.

---

[12]*Pallottino*, 31 F.3d at 1027.  Plaintiffs cite authority that they contend stands for the proposition that leave should be freely given even after a dispositive motion is decided if the plaintiff is "close to stating a claim."  *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).  But this authority pertains to the liberal pleading standards that govern pro se filings.  Plaintiffs are represented by able counsel in this matter and the Court will not apply the standard applicable to motions to dismiss pro se pleadings.

7

### B.    Futility

Defendants ask the Court to deny leave to amend because the proposed amendments would be subject to dismissal under Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

### 1.    Proposed Amended Count 1: Breach of Fiduciary Duty under ERISA against Schmidt, the Duncans, and Schmidt Builders

The Court previously dismissed as time-barred Counts I through IV of the original Complaint, which asserted breach of fiduciary duty claims under ERISA.  In the motion to amend, Plaintiffs argue that additional facts in the Proposed Amended Complaint suffice to trigger the federal concealment rule and, thus, allow the statute of limitations to accrue at the time the fraud was discovered instead of when the breach occurred.  Plaintiffs also attached seven exhibits to the motion for leave that they contend support the facts alleged in the Proposed Amended Complaint.[15]

Defendants argue that the proposed amendment is futile because the additional factual allegations fail to support application of the federal concealment rule, and still do not plead fraud

---

[13]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[14]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15]It is unclear whether these exhibits are intended to be attached to the Proposed Amended Complaint.  The Court evaluates the futility of Plaintiff's proposed amendments based on the allegations in the proposed pleading only, as required by Rule 12.

with the requisite particularity.  For the same reasons outlined in the June 19 Order, Defendants

argue that the claims are time-barred.  Defendants also oppose the proposed prayer of relief for

extra-contractual damages, including punitive damages.

>   **a.      Statute of Limitations**

In its June 19 Order, the Court discussed in detail the statute of limitations provision in

ERISA for claims for breach of fiduciary duty:

> No action may be commenced under this title with respect to a fiduciary's breach
> of any responsibility, duty, or obligation under this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the
> breach or violation, or (B) in the case of an omission, the latest date on which the
> fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge
> of the breach or violation; except that in the case of fraud or concealment, such
> action may be commenced not later than six years after the date of discovery of
> such breach or violation.[16]

Plaintiffs continue to maintain that the statute of limitations for their breach of fiduciary duty

claim accrued when they discovered the breach in July 2011 because it involves fraud or

fraudulent concealment.  Defendants argue that the claims accrued in 2003 and are therefore

time-barred.

There is a split of authority among the circuits as to whether the "fraud or concealment"

provision in 29 U.S.C. § 1113 refers to the nature of the claim for breach of fiduciary duty, or to

the steps taken by the fiduciary to conceal their acts. The majority of circuits have held that the

"fraud or concealment" provision in 29 U.S.C. § 1113 incorporates the federal concealment

---

[16]29 U.S.C. § 1113.

rule.[17]  The concealment rule established by the Supreme Court[18] is derived from the principle of equitable estoppel and provides that when a defendant's wrongdoing "has been concealed, or is of such character as to conceal itself, the statute [of limitations] does not begin to run until the [wrongdoing] is discovered" by the plaintiff.[19]  "The relevant question is therefore not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty."[20]  "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. "[21]  The Second Circuit follows a different approach, holding that the six-year statute of limitations applies if the alleged breach of fiduciary duty involves fraud or fraudulent concealment.[22]  The Tenth Circuit has not yet weighed in on this question.

The Court previously ruled that Plaintiffs' claims failed under either approach—first, the allegations did not support invocation of the concealment rule, and second, the allegations were not particularized enough to support a claim of fraud or fraudulent concealment.  Because the Court found that the claims accrued in 2003, it found they are outside the statute of limitations.  Plaintiffs' Proposed Amended Complaint seeks to avoid this result by pleading additional factual content, urging that these allegations would establish that Defendants took affirmative steps to

---

[17]*Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1552 (3d Cir. 1996); *J. Geils Band Emp. Benefit Plan v. Smith Barney*, 76 F.3d 1245, 1252 (1st Cir. 1996); *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1401-02 (9th Cir. 1995); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172-73 (D.C. Cir. 1994); *Radiology Ctr. v. Stifel Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990); *Schaefer v. Ark. Med. Soc'y*, 853 F.2d 1487, 1491-92 (8th Cir. 1988).

[18]*Bailey v. Glover*, 88 U.S. (21 Wall.) 342 (1874).

[19]*Id.* at 349-50; *see also* Black's Law Dictionary 282 (7th ed.1999).

[20]*Kurz*, 96 F.3d at 1552.

[21]*Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 143 (1879).

[22]*Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 919–20 (2d Cir. 1989).

hide their breach of fiduciary duty.

Plaintiffs propose additional allegations to show active concealment.  First, they maintain that the Information Statement provided to Plaintiffs in May 2003 stated that John Duncan had previously worked in public accounting before joining Schmidt Brothers.  Plaintiffs argue that this statement was intended to divert investigation into Duncan's background that would have revealed his past conviction for felony theft and securities fraud, and his personal bankruptcy. Second, Plaintiffs point to the Summary Annual Reports prepared by SS&C that fail to discuss Duncan's conviction and that fail to place the plan participants on notice that Duncan was not qualified to be a plan fiduciary under ERISA.  The Court agrees that the allegations about the Information Statement are sufficient to show active concealment that would trigger the federal concealment rule.  Assuming the alleged facts are true, as the Court must, Defendants affirmatively took steps to hide John Duncan's criminal history and bankruptcy from the plan participants by representing his work history as an accountant in Texas prior to joining Schmidt Builders.  In fact, according to the Proposed Amended Complaint, Duncan was imprisoned in 1988 for the work that he did in Texas—work that the Information Statement touted as qualifying him to be a plan fiduciary.  The Court can reasonably and plausibly infer from these factual allegations that the statements were made with the intent to divert further investigation into Duncan's background.

These facts are also sufficient under the Second Circuit approach because they plead fraud with particularity.  These allegations point to specific material that diverted Plaintiffs from investigating John Duncan's background because it affirmatively represented his qualifications as a plan fiduciary.  Therefore, Plaintiffs' proposed amended Count 1 contains sufficient facts to

trigger the discovery rule.  Because the fraud was not discovered until 2011, the claim is timely.

      **b.**      **Punitive Damages**

Defendants object that Plaintiffs' prayer for relief on Count 1 inappropriately seeks punitive damages, which are not available under ERISA.  Plaintiffs did not address this argument in the Reply.  The Court agrees that extra-contractual damages, including punitive damages, are not available on Plaintiffs' breach of fiduciary duty claim under ERISA.[23]  To the extent Plaintiffs' prayer for relief seeks extra-contractual damages on this claim, it is futile and the proposed amendment is denied.

      **2.**      **Proposed Amended Count II: Kansas Securities Fraud against Schmidt, the Duncans, and Schmidt Builders**

Plaintiffs propose a new claim against Schmidt, the Duncans, and Schmidt Builders for Kansas Securities Fraud.  They allege that the investment contract offered to Plaintiffs is a security under K.S.A. § 17-1252, and that Defendants violated K.S.A. § 17-1268 by making untrue statements of material fact and omissions to state material facts necessary in order to induce their investment in the ESOP.  Defendants argue that this amendment is futile because the claim is barred by the statute of limitations.

The Kansas Securities Act, K.S.A. §§ 17-1252 through 17-1275, was repealed in 2004.[24] It was replaced by the Uniform Securities Act, subject to the limitation that

> [t]he predecessor act exclusively governs all actions or
> proceedings that are pending on the effective date of this act or
> may be instituted on the basis of conduct occurring before the
> effective date of this act, but a civil action may not be maintained

---

[23]*Lafoy v. HMO Colo.*, 988 F.2d 97, 101 (10th Cir. 1993); *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 888 n.2 (10th Cir. 1988).

[24]K.S.A. § 17-12a703.

> to enforce any liability under the predecessor act unless instituted within any period of limitation that applied when the cause of action accrued or within five years after the effective date of this act, whichever is earlier.[25]

There is no question that this proceeding was not pending on the July 1, 2005 effective date of this act.  The claim is based on conduct that occurred before 2004, so in order for the Kansas Securities Act to apply, the case must have been instituted within that statute's limitations period, or by July 1, 2010, five years after the effective date of the Uniform Act.  The statute does not provide for a discovery rule.  Because the conduct at issue occurred before 2004, the claims are time-barred under the statute of repose set forth in K.S.A. § 17-12a703(a).

Plaintiffs do not dispute that their claim is outside of the statute of repose.  Instead, they argue that equitable tolling applies because the claims are based on fraud and fraudulent concealment.  Defendants address this argument in a footnote, citing a case construing Michigan law, by arguing that statutes of repose are not subject to equitable tolling.[26]  But Kansas courts have held in other contexts that there is a fraud exception to the statute of repose.[27]  The Kansas Court of Appeals has explicitly held that "fraud or fraudulent concealment either toll the statute of repose or make it inapplicable."[28]  As discussed on the breach of fiduciary duty claim, Plaintiffs' Proposed Amended Complaint alleges sufficient facts to give rise to a plausible claim of fraudulent concealment.  Because they did not discover the fraud until July 2011 as a result of

---

[25]*Id.* § 17-12a703(a).

[26]*Padding v. Questar Capital Corp.*, No. 11-CV-0640, 2011 WL 5088638, at *1–2 (S.D. Ill. Oct. 26, 2011) (applying statute of repose in Michigan Securities Act).

[27]*Stark v. Mercantile Bank, N.A.*, 33 P.3d 609, 614–15 (Kan. Ct. App. 2000) (citing *Jennings v. Jennings*, 507 P.2d 241 (Kan. 1973); *Robinson v. Shah*, 936 P.2d 784 (Kan. Ct. App. 1997)).

[28]*Stark*, 33 P.3d at 615.

active concealment, the Kansas Securities Act claim was tolled and it is not barred by the statute

of repose.  Therefore, Plaintiffs shall be permitted to amend the Complaint and add this claim for

relief.

> **3.**     **Proposed Amended Count III: Kansas Common Law Fraud against Schmidt and the Duncans**

Defendants argue that leave to amend to add this claim should be denied as futile because

it is preempted by ERISA.  The Court dismissed the federal common law fraud claim alleged in

the original Complaint on the basis of  ERISA preemption; in the briefing on the motions to

dismiss, Plaintiffs failed to even object to that portion of Defendants' motion.  The Court found

that Plaintiffs abandoned that claim and that ERISA did not permit a separate common law fraud

claim because, at the time of the ESOP election, Plaintiffs were 401(k) plan participants.

The Court finds that its analysis on the federal common law fraud claim applies equally

to the Kansas common law fraud claim asserted in the Proposed Amended Complaint—the

claims are premised on the same facts.  While it is true that state law claims that affect employee

benefit plans in "too tenuous, remote, or peripheral a manner" will not be preempted,[29] Plaintiffs'

common law fraud claim in this case is intertwined with Plaintiffs' claims for breach of fiduciary

duty, brought under ERISA.  Plaintiffs rely on the Sixth Circuit's decision in *Perry v. P*I*E*

*Nationwide, Inc.*, for the proposition that there is no ERISA preemption of state common law

fraud claims because ERISA does not provide a remedy for fraudulent inducement to join an

ESOP.[30]  But the question of ERISA preemption does not turn on whether ERISA provides a

---

[29]*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983).

[30]872 F.2d 157, 161–62 (6th Cir. 1989).

remedy.[31]  The Tenth Circuit has previously held that ERISA preempts state law claims by plan participants or beneficiaries for negligent misrepresentation.[32]

Moreover, in *Perry*, the Court distinguished the plaintiffs' state law cause of action from those in other cases where courts had found preemption on the basis that the plaintiffs in *Perry* did not seek plan benefits or an increase in benefits.[33]  In contrast, the cases the *Perry* court distinguished had found preemption because resolution of the issues in those cases was intertwined with ERISA claims.[34]  The Court finds these cases applying ERISA preemption more analogous to the claims in this case than the Tenth Circuit case of *Uselton*, where the plaintiffs merely sought restitution of a wage reduction and rescission of the plan.[35]  Therefore, Plaintiffs' motion to amend is denied to the extent it seeks to add proposed Count III for Kansas common law fraud.  Count III is futile because it would be subject to dismissal based on ERISA preemption.

### 4.       Proposed Count IV: Removal of Duncans as ESOP Trustees

Proposed Count IV is Plaintiffs' attempt to assert claims on behalf of the Company by the ESOP as a minority shareholder.  As a predicate to that claim, Plaintiffs ask that the Duncans be

---

[31]*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987); *see also Cannon v. Grp. Health Serv. of Okla.*, 77 F.3d 1270, 1274 (10th Cir. 1996); *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 755 (10th Cir. 1991).

[32]*Straub v. W. Union Telegraph Co.*, 851 F.2d 1262, 1263–64 (10th Cir. 1988).

[33]*Perry*, 872 F.2d at 162.

[34]*Id.* (discussing *Childers v. N.W. Airlines, Inc.*, 688 F. Supp. 1357, 1364 (D. Minn. 1988); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215 (8th Cir. 1981); *Ogden v. Mich. Bell Tele. Co.*, 571 F. Supp. 520, 523 (E.D. Mich. 1983)).

[35]*Uselton v. Comm. Lovelace Motor Freight, Inc.*, 940 F.2d 564, 586 (10th Cir. 1991) (considering ERISA preemption of a securities claim).

removed as ESOP Trustees, thereby allowing Enneking, as the only remaining trustee, to assert

the trusts' rights as a minority shareholder.  Once the Duncans are removed, Plaintiffs wish to

assert "any relief available to the ESOP trust as minority shareholder against the defendants for

their wrongdoings, . . . which generally include the state law causes of action including breaches

of corporate fiduciary duty claims."  Specifically, the Proposed Amended Complaint alleges that

Schmidt and the Duncans breached their fiduciary duties to the Company by (1) engaging in

unfair transactions, including the redemption of Schmidt's stock; (2) misusing corporate assets

for the benefit of one or both of the Duncans and entities owned by them; (3) providing false and

materially incomplete information to the ESOP participants and their beneficiaries; (4) failing to

act with care and prudence to protect the Company's stock value; (5) paying excessive and

unwarranted compensation to themselves by mismanaging the Company's business; and (6)

looting and misappropriating Company assets for their personal benefit.

There are several problems with proposed Count IV, as identified by Defendants in their

response.  First, there is an important temporal limitation on any derivative claim that Plaintiffs

may assert.  The ESOP could only have standing to assert claims on behalf of the Company that

accrued after the ESOP was formed.  The claims for breach of fiduciary duty associated with

representations made that allegedly "induced" the 401(k) participants to roll over their accounts

into the ESOP accrued before this time are preempted by ERISA, for the reasons already

explained in the Court's dismissal of the common law fraud claims.

To the extent this claim is asserted on behalf of the Company for breaches of fiduciary

duty that arose after the 2003 purchase, which is the thrust of Plaintiffs' allegations on this claim,

it is not preempted.  But Defendants argue that Plaintiffs lack standing to bring a claim on behalf

of the corporation and that Plaintiffs' Proposed Amended Complaint fails to comply with K.S.A.

§ 60-223a, which sets forth requirements for a derivative complaint.  The statute requires that

such a complaint must be verified, state with particularity the effort made to obtain the desired

action from the board of directors or "comparable authority," and it must allege it is not

collusive.  Plaintiffs correctly respond that an exception to these formalities exists in the context

of a minority shareholder freeze-out involving a closely held corporation.[36]  The Kansas Court of

Appeals has explained the status of Kansas law on this issue as follows:

> In summary, Kansas law embraces the general rule that a
> shareholder suit for injuries to a corporation as a result of officer or
> director misconduct—including self-dealing or breach of fiduciary
> duty—must be brought as a derivative action and may not be
> brought as a direct action unless the corporation is at least a closely
> held if not a statutory close corporation under K.S.A. 17–7202 and
> the plaintiffs can prove that the action will not unfairly expose the
> corporation to a multiplicity of actions, materially prejudice the
> interests of creditor of the corporation, or interfere with the fair
> distribution of the recovery among all interested persons. Then and
> only then does the trial court have the discretion to permit a direct
> action rather than a derivative action.[37]

Plaintiffs admit that Count IV is brought to remedy injury to the corporation, rather than

to an individual shareholder, so the claim must be brought as a derivative action unless it meets

the narrow exception for closely held corporations and Plaintiffs can establish the requirements

for the exception set forth in *Richards*.  The Court does not have discretion to allow a direct

action to proceed unless Plaintiffs at least allege that the direct action meets the *Richards*

requirements that it will not "(1) unfairly expose the corporation to a multiplicity of actions; (2)

---

[36]*Richards v. Bryan*, 879 P.2d 638, 648 (Kan. Ct. App. 1994) (discussing *Sampson v. Hunt*, 665 P.2d 743 (Kan. 1983)).

[37]*Lightner v. Lightner*, 266 P.3d 539, 548 (Kan. Ct. App. 2011).

materially prejudice the interests of creditors in the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons."[38]

While Plaintiffs address the *Richards* factors in the Reply, the Proposed Amended Complaint fails to allege that these requirements are met, which is fatal to their claim.  The Court also notes that there is no allegation in the proposed pleading that Schmidt Builders is a statutory close corporation.  Unlike the facts of *Richards*, here the alleged facts establish that the Duncans entered into a settlement agreement with Kaw Valley Bank, the corporation's creditor, which took control of the company's assets.  The Court cannot reasonably infer that after this settlement, the Duncans had "unfettered control" rendering a demand upon them to be useless.  Moreover, the factual allegations call into question whether the claim would materially prejudice the creditors of the corporation.  The Court declines, based on the allegations in the proposed amended pleading, to exercise its discretion and allow this direct action.  Plaintiffs' motion to amend is denied as to proposed Count IV, for a direct action by the ESOP to remedy injury sustained by the corporation.

### 5.    Proposed Amended Count VII: Fraud and Misrepresentation against SS&C

Finally, Plaintiffs seek to add a second claim against SS&C for fraud and misrepresentation associated with the annual stock valuations it provided to the ESOP participants, which they relied upon to their detriment in initially investing, and then retaining that investment in Schmidt Builders.  SS&C responds, arguing that (1) the Valuation Report

---

[38]*Richards*, 879 P.2d at 648; *Lightner*, 266 P.3d at 551 ("at no time did the Supreme Court suggest that a court had discretion to *allow* a direct action without application and satisfaction of the *Richards* three-prong test; that is, unless the plaintiff has alleged and thereafter proven that the direct action *will not* have *any* of the three adverse consequences designated by *Richards*, the court has no discretion to allow the action to proceed as a direct action."); *see also Miller v. Staab*, 113 P.3d 274 (table), 2005 WL 1429834 (affirming dismissal for failure to plead *Richards* exception).

provided to the ESOP participants negates any allegation of fraud; (2) the claim is barred by the statute of limitations; and (3) the claim is preempted by ERISA.

SS&C raised similar arguments in moving to dismiss the original negligence claim.  This time, SS&C argues that the proposed amended pleading incorporates Exhibit 2, its 2004 Valuation Report, which includes SS&C's valuation methodology.  Plaintiffs' claims against SS&C stem from its contention that this valuation report, and all other subsequent valuation reports, misrepresented the true value of the 2003 transaction, and omitted material information that induced the participants to transfer their 401(k) savings into the ESOP and maintain that investment.  For the same reasons already addressed in its June 19 Order, the Court declines to find that this proposed claim is barred by the statute of limitations or preempted by ERISA.  As with Plaintiffs' negligence claim, the fraud claim accrued when the fraud was discovered in July 2011.[39]  The particular misrepresentations alleged in the Proposed Amended Complaint include that SS&C is bound by certain ethical, legal, professional, and technical standards by which it did not abide, that the valuations were independent, that Schmidt Builders' management would maintain the "character and integrity" of the business enterprise; and that the new corporate structure would allow for orderly succession of management.  Plaintiffs allege that these statements were untrue, and that SS&C knew or should have known that they were untrue at the time they were made.

Plaintiffs allege that SS&C concealed material facts by not disclosing that John Duncan was not subject to internal controls, that it had failed to verify material assets of the company and the collectability of Mary Duncan's promissory note, and its various conflicts of interest.  They

---

[39] *See* K.S.A. § 60-513(a)(3).

allege that these omissions and misrepresentations misled Plaintiffs and induced them into approving the investment of their 401(k) accounts.

Even if Plaintiffs had knowledge of SS&C's methodology in its 2004 Valuation Report, the Court finds that the allegations set forth in the Proposed Amended Complaint are sufficient to establish that they could not reasonably ascertain the specific misrepresentations and omissions until the company collapsed in July 2011.  Accordingly, the statute of limitations did not begin to run until that time and the claims are timely.[40]

The Court also finds, for the same reasons described in its June 19 Order, that ERISA does not preempt this claim, as it is a state common law claim against the accounting firm hired to provide the valuation reports at issue—SS&C is not a traditional plan entity subject to ERISA's fiduciary duty standards.[41]  Because this claim does not affect relations between the traditional plan entities, it does not fall within the broad scope of ERISA preemption.[42]

Finally, the Court does not find that Plaintiffs' incorporation of the 2004 Valuation Report in the Proposed Amended Complaint negates their claims of fraud.  Under Fed. R. Civ. P. 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[43]  The rule's purpose is to provide the defendant fair and adequate

---

[40]SS&C urges that both the negligence and fraud claims are untimely based on the concession by Plaintiffs that they were aware of the 2004 Valuation Report.

[41]*See, e.g.*, *Airparts Co. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062, 1067 (10th Cir. 1994); *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 755 (10th Cir. 1991).

[42]*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir. 1999); *Clark v. Humana Kan. City*, 975 F. Supp. 1283, 1288 (D. Kan. 1997).

[43]Fed. R. Civ. P. 9(b).

notice of the claim and to allow the defendant to respond on an informed basis.[44]   A fraud claim requires "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[45]   Plaintiffs allege that the Valuation Reports, issued annually between 2004 and 2010, are the sources of fraud, satisfying the heightened pleading standard set forth in Fed. R. Civ. P. 9.   Therefore, Plaintiffs may amend the Complaint to add the fraud claim set forth in proposed Count VII.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Reconsideration and, in the Alternative, for Leave to File Amended Complaint (Doc. 44) is **granted in part and denied in part**.  Plaintiffs' motion for reconsideration is denied. The Court grants leave to amend as set forth in proposed Count I for breach of fiduciary duty except as to the prayer for relief, Count II for Kansas Securities Fraud, Count V for breach of fiduciary duty under ERISA, Count VI for negligence against SS&C, and Count VII for fraud against SS&C. The Court denies leave to amend as set forth in proposed Count III for Kansas common law fraud, and Count IV for relief associated with injury to the corporation, because these proposed amendments would be futile.  Plaintiffs shall file an Amended Complaint that complies with this Memorandum and Order within fourteen (14) days.

**IT IS FURTHER ORDERED** that the Motion to Intervene (Doc. 46), filed by former employees of Schmidt Builders Supply, Inc. is **granted in part and denied in part**.  The motion to intervene is granted to the extent the Intervenors assert claims that survive the Court's June 19, 2012 Order on the motions to dismiss and the futility analysis set forth in detail below.  The

---

[44]*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

[45]*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citing *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

motion is otherwise denied.

**IT IS SO ORDERED**.

Dated: <u>January 7, 2013</u>

 S/ Julie A. Robinson 

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE
